UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:15-cv-00443-MOC

| | |
|---|---|
| SAMUEL S. MILLER, | ) |
| Plaintiff, | ) ORDER ) ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#11) and Defendant's Motion for Summary Judgment (#15). The matter has been fully briefed and is ripe for review. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff applied for Title XVI benefits on December 28, 2011, alleging disability beginning that same day. (Tr. 170). His claim was denied at the initial and reconsideration levels for review. (Tr. 84, 97). At Plaintiff's request, an administrative law judge (ALJ) held a hearing on May 20, 2014, at which Plaintiff was represented by an attorney. (Tr. 38). On July 3, 2014, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 19). The Appeals Council denied Plaintiff's Request for Review on July 27, 2015 (Tr. 9), rendering the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. § 404.981. Plaintiff has exhausted his available

1

administrative remedies and the case is now ripe for judicial review under Section 205(g) of the Social Security Act. See 42 U.S.C. § 405(g).

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

{ "pageset": "S69" }Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that because it is left to guess how the ALJ concluded that Plaintiff could perform the relevant functions in light of his severe mental impairments and other limitations in concentration, persistence, and pace, substantial evidence does not support his decision and that remand is therefore appropriate.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

   a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

   b. An individual who does not have a "severe impairment" will not be found to be disabled;

   c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix

1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

C.F.R. § 404.1520(b)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C.  The Administrative Decision**

With an onset date of December 28, 2011, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after December 28, 2011. (Tr. 75). At step two, the ALJ found that Plaintiff has the following severe impairments: hepatitis C, paranoia, depression, and schizophrenia. (Tr. 24-25). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25-27). The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to "perform medium work" except that he is limited to simple, routine, repetitive tasks in a

nonproduction setting, with no interaction with the public and only occasional interaction with supervisors and coworkers. (Tr. 27-31). At step four, the ALJ found that Plaintiff was unable to perform past relevant work. (Tr. 31). At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 32-33). As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 33).

### D. Discussion

#### *1. Plaintiff's Assignments of Error*

Plaintiff seeks review of the Commissioner's final administrative decision, alleging that the ALJ erred by: 1) failing to give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments in compliance with the directives of SSR 96–8p; and 2) failing to, in accordance with 20 CFR § 416.927(c), weigh and explain the medical evidence of record. For the reasons explained herein, the court finds that remand is appropriate based on Plaintiff's first assignment of error.

#### *2. First Assignment of Error: Mental RFC and Function-by-Function Analysis*

Plaintiff argues that the ALJ failed to comply with the directives of SSR 96-8p in assessing Plaintiff's mental impairments. Specifically, Plaintiff argues that the ALJ erred by failing to give a complete function-by-function analysis of his nonexertional mental functions associated with his severe mental impairments of paranoia, depression, and schizophrenia. (Tr. 24-25). The ALJ found that Plaintiff has the following degrees of limitation in the broad areas of functions set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in

5

maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. 26). See 20 C.F.R. § 416.920a(c).

In formulating RFC, the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at 1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. Id. at 5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision) . . . it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at 6. Relevant to the ALJ's finding here, Plaintiff was restricted to "simple, routine, repetitive tasks in a non-production environment . . . [and limited to no] interaction with the public." (Tr. 64). The "basic mental demands of            . . . unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at 4; see also SSR 96-8P, 1996 WL 374184, at 6 (setting forth work-related mental activities required for competitive work).

Only after a function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed. Reg. at 34, 475).

6

Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at 7. The Fourth Circuit has explained that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that the adjudicator will overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do." Monroe v. Colvin, __F.3d__, No. 15-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (citation and internal quotation marks omitted)).

The Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) held that remand may be appropriate where "'an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

Applying that standard, the Fourth Circuit in Mascio determined remand was appropriate because the ALJ in that case held that the claimant could perform certain functions, but "said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point. Id. Because the court was "left to guess about how the ALJ arrived at

7

his conclusions on Mascio's ability to perform relevant functions," remand was appropriate. Id. at 637.

Here, the ALJ did not perform an explicit function-by-function analysis. However, as the Fourth Circuit explained in Mascio, that failure alone is not enough to require remand. Thus, the court must determine whether the ALJ's RFC analysis considered the relevant functions, whether his decision provides a sufficient basis to review his conclusions, and, ultimately whether that decision is supported by substantial evidence in the record. In this case, the ALJ discussed a great deal of medical evidence relevant to Plaintiff's mental impairments. For example, the ALJ considered records from CMC Randolph Behavioral Health Center dated April 6, 1999, through September 1, 2005, showing Plaintiff had a history of treatment for depression and detoxification of his substance abuse. (Tr. 28). Although Plaintiff did not receive further treatment after September 2005, he was presented to the emergency room on September 22, 2011 with complaints of racing thoughts, paranoia, irritability and suicidal ideation. Id.

Further, according to outpatient psychotherapy progress notes dated April 12, 2012, the therapist noted Plaintiff blamed others for his anger and frustrations due, in part, to his several incidents of abuse and trauma during childhood. Id. Plaintiff had a history of not being tolerant around other people. (Tr. 29). Plaintiff reported to the outpatient psychotherapy therapist that he struck his sister in the face at a check-cashing store. Id. He stated that he did better in isolation and reportedly lived in an abandoned house without any other occupants. (Tr. 29-30). Notes from Monarch mental health facility, dated March 2014, indicated Plaintiff's mental status was essentially normal with no memory impairment, and that he had normal speech and was alert and oriented. (Tr. 29). See also (Exhibit 14F). Outpatient psychotherapy notes showed that Plaintiff's symptoms were decreasing while he was on his medication. (Tr. 29, 31). The ALJ noted that,

8

even though Plaintiff alleged problems due to a reading disability, Plaintiff "had jobs in the past that required him to read and has applied for jobs and has been hired." These are the references by the ALJ related to the severe impairments of paranoia, depression, and schizophrenia that Plaintiff experiences.

After summarizing the evidence of Plaintiff's mental impairments and assessing the credibility of the non-medical source[1], the ALJ stated: "the objective medical evidence does not support the claimant's allegations of disabling symptoms and limitations and does not provide a basis for finding limitations greater than those determined in this decision, thus the residual functional capacity finding in this case [finding Plaintiff could perform medium work and simple, routine, repetitive tasks in a nonproduction setting with no interaction with the public and only occasional interaction with supervisors and coworkers] is justified." The ALJ, however, must discuss how these mental limitations affect his ability to "use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 61 Fed. Reg. 34,474, 34,477 (July 2, 1996); see also 20 C.F.R. 404.1545(c). While the ALJ did conduct a thorough analysis of the medical evidence of record and explain his reasoning for the weight given to the various medical opinions and statements of Plaintiff and others regarding daily activities, it is not entirely clear how the evidence aligns with the necessary functions, which is a required showing. See Mascio, 780 F.3d at 636; SSR 96–8p, 1996 WL 374184, at *7.

---

[1] Third party reports from non-medical sources (such as spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy) may be used as evidence of the severity of the claimant's impairment(s) and how it affects their ability to work. 20 C.F.R. § 404.1513. In this case, Willie Mae Miller, Plaintiff's mother, completed a Third Party Function Report on February 16, 2012, which was discredited by the ALJ in his decision. (Tr. 31).

9

The Commissioner urges the court to find that the restrictions placed on Plaintiff, including the requirements that he work in a "non-production" environment and the constraints on his interactions, account for Plaintiff's limitations in concentration, persistence, and pace. Plaintiff, on the other hand, argues they do not. Since the Mascio decision, district courts in the Fourth Circuit have on several occasions considered whether additional limitations such as those imposed by the ALJ here sufficiently account for a moderate limitation in a claimant's ability to maintain concentration, persistence, and pace. The majority of district courts in North Carolina, including this one, have found that they do not account for such a limitation. See, e.g., Biddell v. Colvin, No. 1:15-CV-00080-MOC, 2016 WL 815300, at *5 (W.D.N.C. Feb. 29, 2016) (holding that limitation to "simple, routine, repetitive tasks involving only one to three step instructions, a non-production pace, occasional contact with the public, no intense interaction with supervisors and coworkers, in a setting with no confrontation or brainstorming and dealing with things and not people" did not sufficiently account for plaintiff's limitations in concentration, persistence, and pace); Weeks v. Colvin, No. 5:14-cv-155-D, 2015 WL 5242927, at *4 (E.D.N.C. Sept. 8, 2015) (holding that a limitation to simple, routine, repetitive tasks with only occasional contact with the general public and few workplace changes did not sufficiently address claimant's limitations in pace); Salmon v. Colvin, No. 1:12-cv-1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to "simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form" did not account for claimant's moderate limitations in concentration, persistence and pace nor her ability to say on task); Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015); Hagerdorn v. Colvin, No. 2:12–cv–29–RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015); Jones v.

Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *4 (E.D.N.C. Aug. 13, 2015); Leach v. Colvin, No. 4:15-CV-00021-RN, 2016 WL 50722, at *4 (E.D.N.C. Jan. 4, 2016); Pilcher v. Colvin, No. 5:14-CV-191-RJC, 2016 WL 1048071, at *5 (W.D.N.C. Mar. 16, 2016); Patton v. Colvin., No. 1:15CV616, 2016 WL 3417361, at *3 (M.D.N.C. June 16, 2016). The court finds that here, as in the vast majority of the cases noted above, the limitations provided in the RFC do not adequately address Plaintiff's moderate limitations in concentration, persistence and pace as required by Mascio.

The Fourth Circuit in Mascio also concluded that remand of the ALJ decision was appropriate because the ALJ had determined that the claimant could perform certain functions, but "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence in the record on that point. Mascio, 780 F.4d at 636. Similarly, the necessary explanation of how Plaintiff's severe mental limitations will affect his ability to perform work-related functions, as well as his ability to perform them for a full workday, is missing in this instance. See Monroe v. Colvin, No. 15-1098, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016) (holding that remand was appropriate when the ALJ's failed to make "specific findings about whether Monroe's [limitations] . . . would cause him to experience [his claimed symptoms during] . . . work and if so, how often these events would occur").

The recent decision in Monroe v. Colvin reiterated that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Monroe v. Colvin, No. 15-1098, 2016 WL 3349355, at *10 (4th Cir. June 16, 2016) (quoting Mascio, 780 F.3d at 636). The court finds that this case necessitates such a remand. Despite Plaintiff's severe impairments regarding paranoia, depression, and

schizophrenia, which the ALJ accepted as true, there is no discussion of Plaintiff's ability to perform relevant functions in a work day in light of the aforementioned impairments. Because the court is left to guess as to how the ALJ concluded that Plaintiff could perform the relevant functions in light of his mental limitations, see Mascio, 780 F.4d at 637, the court finds that substantial evidence does not support the decision and that remand is therefore appropriate.

In sum, the court finds that an explanation of how Plaintiff's mental limitations affect his ability to perform work-related functions, as well as his ability to perform them for a full workday, to be necessary here. See Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.") (internal citation omitted). The court also finds that because it is left to guess how the ALJ concluded that Plaintiff could perform the relevant functions in light of his severe mental impairments and other limitations in concentration, persistence, and pace, substantial evidence does not support his decision and that remand is therefore appropriate.

### 3. Remaining Assignments of Error

The court will not review the remaining assignments of error as it appears that the final determination of the Commissioner does not conform to the requirements of Mascio, resulting in the need for a new hearing.

V. **Conclusion**

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). Finding that there was not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be reversed and remanded for further proceedings consistent with this Order.

## ORDER

**IT IS, THEREFORE, ORDERED that:**

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED;**

(2) Plaintiff's Motion for Summary Judgment (# 11) is **GRANTED;**

(3) the Commissioner's Motion for Summary Judgment (# 15) is **DENIED;** and

(4) this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: July 11, 2016

Max O. Cogburn Jr.
United States District Judge